Step up and identify yourselves, please. You guys know the routine for time basically. We'll let you go a little. We are going to basically try to limit you to discuss error and plain error. We don't want to hear the background facts. We don't need that. Okay. So that's basically it. So identify yourselves. For the record, Jonathan Pilsner with the Office of the State Appellate Defender on behalf of minor respondent Omar Farmer. Assistant State's Attorney Tyler Cox on behalf of the people of the state of Illinois. All right. You may proceed. Thank you. May it please the court, counsel. Omar has raised a number of issues before this court. And based upon the court's guidance, you want me to constrain my arguments into the plain error and forfeiture arguments that I raised. Is that correct? Correct. I think that's the only really relevant person in this case. I mean, that's the whole ball of wax in reality. Then I'm happy to tailor my arguments to that. The state in its response argued that three of the four issues pertaining to the probation conditions that Omar raised were forfeited and can only be raised under plain error and accordingly that Omar couldn't raise them under plain error. In response, Omar argues, first off, that forfeiture in this case should not be applied because of the nature of juvenile proceedings and some preceding Supreme Court precedents, specifically in W.C. There were no objections. Is that correct? There were no contemporaneous objections, yes. Okay. To answer the obvious questions that come from that, when the probation conditions were coming from the bench, they were literally in the middle of the sentencing. The trial court was not hearing evidence. There was not evidence being admitted. There was no evidentiary objection to object to in the moment. When these conditions that Omar challenged were coming down, they were in the middle of sentencing. The trial court was in the middle of sentencing. Now, obviously, for preservation purposes, there needs to be a contemporaneous objection and then the related post-adjudicatory or post-trial, post-sentencing motion filed. When there is a situation when the trial court is in the middle of rendering a ruling, it seems, first off, impractical. First off, there are no evidentiary concerns to object to because the trial court is rendering its findings and its final decisions as it was in this case. In that case, it seems impractical to ask, first off, it seems impractical to ask trial counsel, I'm sorry, Judge, I just would like to object for the record. Please continue sentencing my client that you're in the middle of. Some of that logic is supported inside of the dicta of WC. When the Supreme Court addressed the post-trial requirement for juvenile delinquency hearings, the adjudicatory phase, the Supreme Court noted that the contemporaneous objection is to deal with problems that come up in the matter of evidence going into the record. That's not a problem when the trial court is simply handing down a verdict. So in that case, it's, again, it seems impractical to ask trial counsel, like I said, to ask the court, I'm so sorry, to ask the court to stop what it's doing so that it can at least make its objection for the record. And then we come to the requirement that a post, in this case, a post-dispositional motion be filed. As I laid out in my reply brief, the post-sentencing motion requirement is in the corrections code, inside 730 ILCS. It is not specifically incorporated inside the Juvenile Court Act. Now, the logic from WC says that if the post-trial motion is in the Code of Criminal Procedure and not referenced inside the Juvenile Court Act itself, then there's no direct implication that the Juvenile Court Act requires a post-trial motion to be filed. That's what the Supreme Court noted in WC when it said juvenile delinquency proceedings don't require a post-trial motion to preserve the record. And that same logic makes sense here. Again, there is no requirement in the Juvenile Court Act that you file a post-sentencing or post-dispositional motion to preserve these areas for appeal. A juvenile delinquency, a finding, and then a dispositional order is final for purposes of appeal, but that other, that post-sentencing, that post-dispositional motion requirement isn't incorporated in the Act. And then secondly, and more importantly, the Supreme Court in WC noted the general nature of juvenile proceedings and how they are different than adult court proceedings. They are more informal. The purpose behind them is to guide and adjust the juvenile delinquent into becoming a more functioning member of society in a different way than adult criminal proceedings are. And so the Court, and this is in a public policy aspect, noted that it was lawful to impart something outside of the code which made it more difficult for juveniles to appeal these sorts of issues. In that respect, it appears the Supreme Court was saying these are different cases. These are different things. We treat these differently for lots of reasons. Yes, for delinquency proceedings, we impart the rules of evidence, the standard of doubt, the reasonable doubt standard onto them. But that's sort of where it stops when we compare juvenile proceedings to adult criminal proceedings. And as the Court noted, it was also lawful to make it harder for juveniles to appeal these things. Additionally, along that line, the nature of the relationship between the juvenile, the minor respondent, and the Court is more of an informal caretaking role in this respect when we're talking about forfeiture and plain error. It's not the Court trying to render a final ruling and then hope that that carries forward. The Court and the juvenile respondent are often interacting, and these dispositional orders are subject to modification until the juvenile is discharged at the end. In that respect, the Supreme Court again in W.C. noted there are plenty of opportunities for the trial court to correct any errors that may be identified or that may be brought up along the course of it. But as far as for appeal purposes are concerned, the Court didn't feel that that post, that the same stringent standards that we hold adult criminal cases to for the forfeiture rule should be applicable in juvenile proceedings. And along those lines, they said for all of those reasons and the public policy argument, it was appropriate that forfeiture shouldn't apply in that post-trial, post-adjudicatory fashion. So now you're going to try and tell us why plain error applies in this case. If the Court does find that forfeiture does still apply and that the three issues that can only be reached via plain error can be reached via plain error, there are two different prongs upon which. The first one, the reason on this prong, the balance, that goes to the first prong, plain error, that the evidence was closely balanced. In this case, both of these conditions deal with gangs or gang activity or gang membership or gangs of the sort. But there was no evidence at trial that this was a gang-related crime. The only evidence, the only mention of gangs comes from the Social Investigation Report, which mentioned that Omar was not a member of a gang but associated with people with gangs, had friends in gangs. And so I'd argue that on the reason on this count, the evidence there is very closely balanced and can be reached on first prong, plain error. As to the challenge that the probation condition is overly broad and touches upon too many interests, as well as the First Amendment free speech challenges, both of those involve the trial courts in positions of conditions that touch upon a wide swath of very important and protected liberty interests. Obviously, the First Amendment, the right to free speech, is possibly one of the most important liberty interests that any American citizen has. If you were to pick which prong, which prong do you think is more appropriate here, given all of the facts that we're dealing with? Given the serious nature of the challenges that Omar is levying against these, the fact that this calls into question the integrity of the judicial process when the court is coming down and saying, I'm going to take your constitutional rights and I'm going to curb them in such a manner that it calls into question that second prong. And the second prong is more important because we are dealing with conditions that really do have drastic effects on foundational constitutional rights, a wide range of them, but the First Amendment. Before we get to that, though, let's look at the statute itself. Are you questioning that that statute is unconstitutional? The statute that dealt with the no contact order? Inside of that, inside the juvenile? Yes. There is a facial challenge to the statutory provision that I believe empowers the child. That's the state, though. When you say facial, that's the judge's application to the individual. No. That doesn't say that the statute is unconstitutional. There's a couple of arguments inside of that. There is a facial challenge saying that the statute which empowered the trial court to order the no contact order is facial and unconstitutional. That's the void for vagueness challenge that Omar has raised. There's also an as-applied challenge. It's best defined as an as-applied challenge, that the trial court's imposition of these conditions as they were applied, that one is not a facial challenge. That's an as-applied challenge. There's two different challenges rolled inside there. So taking this as an applied challenge, respond to that. For the as-applied challenge, again, it goes to that second prong of plain error, the questioning the integrity of the judicial process because the order touches upon so many different liberty interests. With the no contact order, because the no contact order is so broad and covers so much legally permissible conduct, that the question then becomes is, is it appropriate to review this forfeited error, presuming it's been forfeited, because it touches upon so many interests. As for the First Amendment, the First Amendment right to free speech challenge, that is, of course, a very pinnacle right that everybody enjoys. And anything that directly curbs a juvenile respondent's right to free speech is something that calls into question the integrity of the judicial process such that it should be reviewable even if it's been forfeited. This Court should seek to review it just to make sure, not necessarily because, excuse me, let me rephrase that, simply because it's such a pinnacle interest. This is a pinnacle interest of Omar's. It's a pinnacle interest of society to make sure that the government is not curbing free speech without the proper measures that, even if it has been forfeited, reaching it on second prong plain error would be appropriate. And, of course, as this Court knows, forfeiture is a requirement of the parties. It's not a limitation on this Court as well. So if there are no more questions, I will reserve the balance of my time for rebuttal. Thank you. That's a shocker. I thought we'd hear a lot more than that. I know. So I guess we have to handle this. Good morning, Your Honors. May it please the Court. Assistant State's Attorney Tyler Cox, on behalf of the people of the State of Illinois, respectfully asking this Court to affirm respondent's adjudication for armed robbery and affirm the juvenile court's imposed conditions of probation. I will start by briefly addressing the plain error issues in this case. As we stated in our brief, the people maintain that respondent has forfeited all but the facial challenge to the no-contact statute in this case. Let me ask you a question right up front. You know, recently the criminal statute was amended to take the word contact out. So what's your opinion that they left it in in the juvenile act? That is correct, Your Honor. And as far as I'm aware, that is with an actual criminal statute, not a condition of probation, and not a juvenile condition of probation. The function of the juvenile court is to rehabilitate a minor respondent, to give him steps to succeed in a life free of crime and free of violence. To change the wording in a juvenile statute would be doing that at half measure. It would be giving the respondent the ultimate goal of avoiding gang activity, but it would not be giving him the steps to get there. But the problem is the word control is so vague that that gives our wonderful police any opportunity to do anything they want. And that's why they threw out or amended the one. And my concern is I don't see any difference here between the two, and I find it that the judge in this case may have gone overly broad at least. I believe you're referring to the term contact, Your Honor. This specific issue has been addressed by the second district in People v. Jameson. The defendant there argued that contact was a vague term in an adult criminal statute regarding gang contact. The court there specifically stated that the word contact bears definitions of association, relationship, connection, communication, and to get in communication with. Contact is more than just incidental. It is deliberate interaction with a person. It is interacting with these gang members, these people who have chosen to commit crimes. There is nothing about a lab partner in school. Your Honor, I would argue that in this case, that is, if a respondent had an issue understanding the term contact, it was he had an opportunity to bring it up at sentencing. He chose not to do so, and that deprived the juvenile court of any kind of fact-finding it could have done to alleviate any of these concerns, including the fact that he might have had a lab partner that was an avowed gang member. However... Let me just... Assuming the statute is constitutional, the way it was applied by the judge, are you satisfied with his application, or don't you think it should have been more limited, more specific as to conditions that an individual of normal intelligence might have adored to understand? Your Honor, I am satisfied with the way the judge applied the statute in this case. As I stated, the term contact is sufficiently understandable to a person of rational intelligence. If a respondent had any issues with understanding the term contact, he had an opportunity to say something to the juvenile court. The contact stuff, that comes from a form. The box gets checked, right? That is correct. It is a statutorily authorized condition of probation. That is exactly what the juvenile court authorized and put in place in this case. The overriding concern of the juvenile courts is rehabilitation. In this case, having no contact with these avowed gang members directly serves that purpose. I think we all agree with that, but the question is, how do you weigh that versus reasonableness in a situation where his brother is potentially a gang member, the bar he goes to, that guy is a gang member, one of his teachers is a gang member. Doesn't that tend to make you think that maybe the application by the judge was vague and ambiguous and that he could have tailored it more specifically, like you can't go to that bar because we know that is a gang member. You can't do this, you can't do that, but you can do these things. Yes, I think that would have been great if the juvenile court could have done that. However, by not seeking a clarification, my respondent in this case deprived the juvenile court of any opportunity to find out whether there was a bar he couldn't go to, whether there was a lab partner he couldn't work with. Respondent remained silent when the juvenile court imposed this specific condition of probation. Respondent relies on NRAJW for his argument that his specific statute is unconstitutional as applied. In that case, the condition of probation effectively banned the minor from the town where he lived, the town where his family lived, and the Illinois Supreme Court found in that case that that banishment affected rights of travel, free speech, assembly, and association. In this case, there is no such right to association with gang members. The Illinois Supreme Court and the U.S. Supreme Court explicitly stated that in Chicago v. Morales. There is no first-amendment right to association with gang members. So he can't see his brother. For the term of his probation, under this provision, he cannot interact or contact his brother. However, because he is a juvenile, as respondent admits, the juvenile court can correct, can clarify any of the terms of probation in this case. The juvenile minor respondent does not have to come to the appellate court to do so. He does not have to declare the statute unconstitutional to do so. He simply can go back to the juvenile court, seek clarification or seek modification by explaining his situation, particular situation. He has not done so in this case, did not elect to do so in this case. Additionally, no court has ever said that a juvenile is not required to contemporaneously object to something at sentencing in order to prevent, in order to preserve it for review. We do not, the people do not argue in their brief that a post-trial motion was required. Simply that he had to have said something to seek clarification on something in this case and respondent did not do so. Your Honor, this condition of probation aimed only to protect respondent and ensure his rehabilitation, which respondent himself concludes is a compelling interest. But it is beyond compelling. It is the single most important interest the government has in juvenile courts. That is protecting juveniles, protecting juveniles that have just been adjudicated delinquent of crime and ensuring that their life going forward is not full of crime. That they are not in the adult juvenile, excuse me, the adult court system in the future. And respondent also ignores that it is the courts, not police officers, not people on the street that enforce these conditions of probation. He claims that these conditions of probation are unconstitutional on its face because they encourage discriminatory enforcement. However, that is simply not the case with conditions of probation, excuse me. Your Honor, there are no further questions. The people respectfully ask that you affirm respondent's adjudication for armed robbery and affirm the juvenile court's conditions of probation. Thank you. Very briefly, first of all, the State repeats something that they repeated a number of times in their argument that the impetus was on Omar to ask the court for some clarification at some point. But there's really no basis in law that says a person of ordinary intelligence must reach out to the court and say I realize that you've curbed my constitutional rights, but what do you really mean? In fact, that highlights again the vagueness and the fact that these conditions are there, but we don't really know what they truly mean. Secondly, the court also, excuse me, the State again highlights that Omar doesn't have the right to associate with gang members. Gang membership is obviously not a protected right of association. But Omar, as the Justice pointed out, has a right to associate with family members. He has a right to associate with coworkers. He has a right to associate with school or class members. And as I noted in my brief, one of the conditions that the trial court imposed too specifically was that Omar try to find and keep gainful employment and get his GED. And now we have a situation where Omar may be placed in a situation where he is trying to comply with that order by having a job or going to GED classes, but he is either working with or he was working alongside or he is being taught by somebody who is a documented gang member by the Chicago Police Department. And now Omar is placed in an unenviable position of trying to decide which probation condition he's got to comply with. That's what this condition has imposed upon him. The State also brought up the Hansen case from the second district, the Jansen case, excuse me, just to reiterate the fact that case dealt with a different factual situation. It also dealt with a different statute. That statute had much more definition in contouring it than the situations in this case does. And lastly, I want to just briefly address the arbitrary enforcement. The State says that Omar ignores the fact that it's the court that decides whether or not to violate probation. The ultimate decision may be left up to the court, but it is a probation officer who decides whether or not she or he is going to file that violation. It is the State's attorney's office that decides whether or not they're going to seek that violation to bring that before a judge. So at the end of the day, whether or not they want to bring Omar before that judge and say, Judge, we believe he's violated his probation. We're bringing him in. We're putting his life and liberty at risk. That decision is still left up to the arbitrary discretionary decisions of law enforcement officers, which is a pinnacle concern. And for those reasons, Omar asks that this court either strike the probation conditions or conjure them so that they are constitutionally palatable. Thank you. Thank you both. We'll deliberate and give you an answer. I wish to thank both of you. You both argued very well, and your briefs were excellent. Thank you.